UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GIAN V. CORBIN, individually and on
behalf of all those similarly situated,

    Plaintiff,

v.                                                 Case No. 6:13-cv-180-Orl-18TBS

AFFILIATED COMPUTER SERVICES,
INC., XEROX BUSINESS SERVICES,
LLC, XEROX CORPORATION,

    Defendants.
_____

REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Memorandum in Support of Defendants' Motion to Dismiss or in the Alternative, to Stay Proceedings Pending Arbitration.[1]  (Doc. 19).  The motion has been referred to me for a report and recommendation.  (Doc. 20).

I. Background

Plaintiff brings this action individually and on behalf of all similarly situated persons, alleging that Defendants failed to pay overtime wages in violation of the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201 et seq.  (Doc. 1).  Defendant Xerox Business Services, LLC ("XBS") is a wholly owned subsidiary of Xerox Corporation.  (Doc. 19-1 at 2).  Prior to a name change in 2012, XBS was known as Affiliated Computer Services, Inc. ("ACS").  (Id.)  Plaintiff alleges that he

---

[1]Defendants' memorandum is their motion.

was employed by Defendants in Florida as a Data Support Analyst from about November 2011 until November 2012. (Doc. 1 ¶ 8). During Plaintiffs' employment, Defendants had a common policy and practice of not paying their Data Support Analysts time and one-half for work performed in excess of 40 hours per week, in violation of the FLSA. (Id. ¶¶ 27, 30). Defendants contend that Plaintiff agreed to arbitrate this claim and waived his right, if any, to participate in a collective action. (Doc. 19). The motion for dismissal pursuant to FED. R. CIV. P. 12(b)(1) and (6) is supported by the Declarations of Jamie Son (Senior Human Resources Director for XBS) and Eugene Johnson (Ombudsman for XBS). (Docs. 19-1 at 2).

In his Declaration, Mr. Son states that ACS had a comprehensive, binding Dispute Resolution Program ("DRP") for settling most workplace disputes. (Doc. 19-1 at 2-3). ACS could make changes to the DPR prospectively, after notice to its employees. (Id.) The DRP continued in effect after ACS changed its name to XBS. (Id. at 3). When Plaintiff was hired, he was given a copy of the Employee Guidebook which summarized the DPR. (Id.) Relevant pages of the Guidebook are attached to Mr. Son's declaration. (Id. at 6-14).

Mr. Son also states that Plaintiff electronically certified that he had received and reviewed the Guidebook. (Id. at 3). As proof, Mr. Son provides a copy of a document with the heading "You must click on the link below and review the ACS Employee Guidebook (October 2011)." (Id. at 15) (emphasis in original). At the end of the document it says: "By initialing the box below, I certify that I have reviewed the above information, will read the ACS Employee Guidebook and any

applicable addendum, and I agree to the conditions of hiring." (Id.) (emphasis in original.). Plaintiff's typed initials appear in the space provided at the end of the document. (Id.).

Mr. Son has also testified that when Plaintiff was hired, he received new hire training from the company's Ethics Office. (Doc. 19-1 at 3). This training, conducted on a computer using an interactive process, included a module explaining the DRP. (Id.)

Attached to Mr. Son's Declaration and identified as an XBS business record, is a document titled "ACKNOWLEDGMENT OF DISPUTE RESOLUTION." In this document, Plaintiff allegedly agreed that the DRP was the exclusive means for resolving all disputes concerning his employment. (Id. at 5). Plaintiff's name is typed in the space provided for his signature, followed by an IP address and the date. (Id.)

Mr. Johnson states in his Declaration that on September 14, 2012, XBS issued a revised version of the DRP. (Doc. 19-2 at 1). Plaintiff and his fellow employees were informed of the changes by email bearing the subject line: "DRP (MANDATORY ARBITRATION PLAN) WILL APPLY TO YOU." (Id.) The body of the notice appears below:

************IMPORTANT NOTICE************

CHANGES TO XEROX BUSINESS SERVICES
DISPUTE RESOLUTION PLAN AND DISPUTE
RESOLUTION RULES

The purpose of this Notice is to inform you of upcoming

changes to our Dispute Resolution Plan and Rules ("DRP").  These are the first changes to the DRP since it was implemented back in 2002 (other than name changes to reflect Xerox's purchase of ACS).  While the DRP has withstood the test of time, we recognize the fact that there have been a lot of changes internally and externally. So, we decided it was time to review and refresh our DRP to ensure it continues to help effectively resolve disputes moving forward.

A complete copy of the DRP with all the changes and updates is available by clicking here.  You can also find a copy of the revised DRP on Infobank under HR Quicklinks.  You are strongly encouraged to review the DRP carefully because the changes and updates impact your legal rights.  These changes and updates will become effective thirty (3) days after you receive this Notice ("Effective Date"), without further notice and will automatically apply to you if you are still employed with XBS on the Effective Date.  Acceptance of the DRP, as revised, is a condition to your continued employment after that date.

As you already know, under the terms of the DRP, virtually all legal Disputes (as defined in the DRP) concerning your employment, the terms and conditions of your employment and/or your separation from employment are subject to final and binding resolution exclusively by arbitration. In other words, both you and the Company waive the right to have a Dispute decided by a judge or jury. You do not however, give up any legal remedies that would otherwise be available to you in a court of law. One of the changes made to the DRP is the addition of a new  provision which prohibits you from initiating or participating in the arbitration of a Dispute on a class, collective or consolidated basis or in a representative capacity. The new provision can be found in Section 4 (c) of the DRP. It is important that you understand this new provision, as well as any other changes, will only apply prospectively. So, if you already are a party to or a member of a class action case pending against XBS, this new provision will not apply to that case.

-4-

> Another important change to the DRP is the amount of advance notice you will be entitled to receive before future changes will become effective. The number of days is being increased from ten (10) to thirty (30) days. There are additional changes besides the ones described in this Notice, so it is very important that you read and understand the entire DRP.
>
> As noted above, by continuing your employment with XBS after the Effective Date you are accepting and consenting to be bound by the revised DRP. If you do not wish to accept and be bound by the terms of the revised DRP, you must terminate your employment before the Effective Date. Termination prior to that date does not alter your prior agreement to accept the 2002 version of the DRP and to be bound by that version. Any attempt to reject any or all of the terms of the revised DRP other than by separation of employment will not preclude application or enforcement of the DRP to future Disputes.
>
> This Notice does not alter the at-will status of your employment with XBS.

(Doc. 19-2 at 3) (emphasis in original.).

This notice was sent to Plaintiff's email address. (Id. at 1-2). The email system recorded the date and time of delivery and the date the email was opened. (Id. at 2). The documents attached to Mr. Johnson's Declaration show that the email to Plaintiff was opened at 7:56 PDT on September 14, 2012. (Id. at 5-6).

Plaintiff has filed his own Declaration in which he testifies that he does not recall seeing, reviewing, or signing the documents attached to the Son and Johnson Declarations. (Doc. 23-1 at 1-2). Then, after stating that he does not recall the documents, he specifically denies signing or initialing them. (Id.) He also denies having ever seen the DRP or agreeing to the DRP as a condition of his

employment. (Id. at 2). The primary issue for resolution is whether the parties agreed to arbitrate this dispute.

## II. Legal Standards

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of arbitration agreements. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). It preempts state law to the extent state law treats agreements to arbitrate differently than other contracts. Id. The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires a written agreement to arbitrate but, it does not require that the parties sign the agreement. Id.; Caley, 428 F.3d at 1369.

The FAA applies to arbitration agreements "involving commerce." 9 U.S.C. § 2. The United States Supreme Court has interpreted the term "involving commerce," as used in the FAA to be "the functional equivalent of the more familiar 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2002).

Arbitration is a matter of contract and a party cannot be required to arbitrate a dispute it did not agree to submit to arbitration. Chastain v. Robinson-Humphrey

Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992).  Whether the parties entered into an agreement to arbitrate a dispute is ordinarily an issue for judicial determination.  Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S.Ct. 2847, 2855 (2010).  In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts while at the same time, taking into consideration, the federal policy favoring arbitration.  Caley, 428 F.3d at 1368.

Under Florida law, the formation of an enforceable contract requires "'an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained.'" West Const., Inc. v. Florida Blacktop, Inc., 88 So. 3d 301, 304 (Fla. 4th DCA 2012) (quoting Savoca Masonry Co., v. Homes & Son Constr. Co., 542 P.2d 817, 819 (1975)).  Whether an express contract has been formed "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having meant the same thing but on their having said the same thing." Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 302 So. 2d 404, 407 (Fla. 1974) (quoting Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957)).

Florida law provides that in deciding a motion to compel arbitration, the Court must consider: "(1) whether a valid, written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate has been waived." Senti v. Sanger Works Factory, Inc., No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *5 (M.D. Fla. April 18, 2007) (citing Seifert v. U.S. Homes Corp., 750 So. 2d 633 (Fla. 1999)).  "'All questions concerning scope or waiver of the right

to arbitrate under contracts should be resolved in favor of arbitration rather than against it.'" Id. (quoting Zager Plumbing, Inc. v. JPI Nat. Const., Inc., 785 So. 2d 660, 662 (Fla. 3d DCA 2001)).

Motions to compel arbitration are generally treated as motions to dismiss for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1). Mullinax v. United Marketing Group, LLC, No. 1:10-cv-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011). Under Rule 12(b)(1), the Court will dismiss an action if it lacks subject matter jurisdiction to hear a plaintiff's claims. See Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1998). Rule 12(b)(1) attacks are either "facial" or "factual." Garcia v. Copenhaver, Bell & Assoc., M.D.'s P.A., 104 F.3d 1256, 1260 (11th Cir.1997). "A 'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir.2007) (citations and quotations omitted). "'Factual attacks,' on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.'" Id. (citations and quotations omitted). Motions to compel arbitration generally raise factual attacks and thus, the Court may consider evidence outside the four corners of the complaint. Mullinax, 2011 WL 4085933, at *8.

The burden is on the party moving to compel arbitration to make a prima

facie showing of the existence of an agreement to arbitrate. In re W. Wiand, No. 8:10-cv-71-T-17MAP, 2011 WL 4532070, at *4 n.13 (M.D. Fla. June 8, 2011).

When a party to an arbitration agreement refuses to arbitrate a covered dispute, the aggrieved party can petition the Court for relief. 9 U.S.C. §4. The Court must hear from the parties and then, if it is satisfied as to the making of the agreement and the failure to perform, it should enter an order directing the parties to arbitrate the dispute. Id. But, if the Court finds an issue concerning the making of the agreement to arbitrate or the failure, refusal or neglect to perform the agreement, then the Court "shall proceed summarily to the trial thereof." Id.

"'To make a genuine issue entitling the [party seeking to avoid arbitration] to a trial by jury [on the arbitrability question], an unequivocal denial that the agreement had been made [is] needed, and some evidence should [be] produced to substantiate the denial.'" Chastain, 957 F.2d at 854 (quoting T & R Enters. v. Cont'l Grain Co., 613 F.2d 1272, 1278 (5th Cir. 1980)).[2] In Chastain, the plaintiff denied having ever signed an agreement to arbitrate and stated that she never gave her father authority to sign on her behalf. The defendant admitted plaintiff did not sign the agreement. The Eleventh Circuit held these facts were sufficient to require the trial court to determine the validity of the agreement before compelling arbitration. Id. at 855. In its unpublished decision in Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785 (11th Cir. 2008)) the Eleventh

---

[2]The Eleventh Circuit has adopted as precedent, decisions of the Fifth Circuit issued prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

Circuit said the party disputing the making of an agreement to arbitrate must substantiate its denial "'with enough evidence to make the denial colorable.'" Id. (quoting Wheat, First Secs., Inc. v. Green, 993 F.2d 814, 819 (11th Cir. 1993)).[3] In making this determination, the court should apply the summary judgment standard and give the party denying the agreement to arbitrate the benefit of all reasonable doubts and inferences. Id.

### III. Analysis

The Declarations of Jamie Son and Eugene Johnson are sufficient to make out a prima facie case that the parties agreed to arbitration. Plaintiff has unequivocally denied that he agreed to arbitrate any disputes with Defendants. But, he has not come forward with any evidence to substantiate his denial. Defendants have produced evidence, the authenticity of which has not been disputed, which shows that in September 2012, a notice of changes to the DRP was sent to Plaintiff at his email address and opened. In response, Plaintiff says he does not recall receiving or reviewing the document but that falls short of a denial that he received and opened the email. On this record, I am satisfied that Plaintiff received the email.

The next issue is the sufficiency of the notice that was sent to Plaintiff. There is nothing inherently wrong with an employer using email to communicate with its employees in the workplace. And, I find nothing objectionable about the

---

[3]Although unpublished opinions are not considered binding authority, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. See 11th Cir. R. 36-2.

use of email to notify employees of changes in their contracts of employment so long as the email is sufficient to put a reasonable employee on inquiry notice that an alteration in the employment relationship is being made. Campbell v. Gen. Dynamics Govt. Sys. Corp., 407 F.3d 546, 557 (1st Cir. 2005).

The email in this case was straightforward and to the point. The subject line clearly and unambiguously stated in capital letters that it concerned changes to the DRP including a mandatory arbitration plan that would apply to Plaintiff. The choice of language and tone provided fair warning that the email was important and required Plaintiff's attention. The body of the notice clearly stated the critical facts that changes were being made to the DRP that would impact Plaintiff's legal rights and that the resolution of employment disputes would be handled exclusively through binding and final arbitration. The email included a link to the revised DRP and encouraged employees to review the changes that had been made. While XBS may be faulted for not requiring an affirmative response to the email I am unaware of any law making this a requirement for enforceability of the notice. Accordingly, based upon the totality of the circumstances, I find that the email provided Plaintiff and his fellow employees with reasonable notice of the changes being made to the DRP.

The email notice that was sent to Plaintiff constituted an offer that was deemed accepted if Plaintiff continued his employment after thirty days, which he did. Florida law recognizes the acceptance of an agreement by performance. St. Mary's Hosp., Inc. v. Schocoff, 725 So. 2d 454, 455 (Fla. 4th DCA 2003) (accord

and satisfaction established in part by acceptance of performance of new agreement); Chassan Prof. Wallcovering, Inc. v. Victor Frankel, Inc., 608 So. 2d 91, 93 (Fla. 4th DCA 1991); Cooper v. Wolkowitz, 375 So. 2d 1099, 1101 (Fla. 3d DCA 1979).  The mutual promises and obligations in the DRP are sufficient consideration to support the agreement and the email that was sent to Plaintiff satisfies the requirement of specificity.

The next question is whether the parties' agreement involves commerce.  Plaintiff did not allege in his complaint that Defendants engage in interstate commerce.  But, Mr. Son's Declaration states that XBS is a "multi-national corporation" which "operates in every state and several countries, serving people from inside and outside Florida, utilizing interstate mail and travel systems, and recruiting and advertising outside Florida."  (Doc. 19-1 at 1).  Plaintiff does not dispute these assertions which suffice to satisfy the commerce requirement.

The DRP expressly provides for the arbitration of alleged violations of the FLSA.  (Doc. 19-1 at 27).  FLSA claims are arbitrable under Eleventh Circuit case law.  Caley, 428 F.3d 1359; De Olivera v. Citicorp North America, Inc., No. 8:12-cv-251-T-26TGW, 2012 WL 1831230, at *2 (M.D. Fla. May 18, 2012); Shepherd v. Timber Greens Comm. Assn', Inc., No. 8:08-cv-1706-T-33EAJ, 2008 WL 4844759, at *1 (M.D. Fla. Nov. 6, 2008).

In the DRP, Plaintiff waived his right to bring collective action claims.  The Eleventh Circuit has determined "that arbitration agreements precluding class action relief are valid and enforceable." Jenkins v. First American Cash Advance of

Ga., LLC, 400 F.3d 868, 877-78 (11th Cir. 2005).

The final question is whether the Court should stay or dismiss this action if it refers the parties to arbitration. Should the parties settle Plaintiff's FLSA claim, the Court will have to make a finding that the settlement represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" after "scrutinizing the settlement for fairness." Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982); see also Silva v. Miller, 307 F. App'x 349, 351 (11th Cir. 2009). Because the Court may be called upon for this purpose, I recommend it stay this case. Downey v. Robert W. Baird & Co., Inc., No. 6:07-cv-1180-Orl-31DAB, 2007 WL 2729587, at *2 (M.D. Fla. Sept. 18, 2007) (Electing to stay action because settlement of FLSA claims requires judicial supervision).

## IV. Recommendation

Now, it is respectfully recommend that the Court GRANT Defendants' motion to compel arbitration, REFER this dispute to arbitration, and STAY the case pending the outcome of arbitration.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

IN CHAMBERS in Orlando, Florida, on April 15, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

Presiding United States District Judge
Counsel of Record