UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GIAN V. CORBIN,**

        **Plaintiff,**

**v.**   Case No:  6:13-cv-180-Orl-36TBS

**AFFILIATED COMPUTER SERVICES, INC.,
XEROX BUSINESS SERVICES, LLC, XEROX
CORPORATION,**

        **Defendants.**

**ORDER**

This cause comes before the Court on the Report and Recommendation of Magistrate Judge Thomas B. Smith (Doc. 28) with respect to the Defendants' Motion to Dismiss or in the Alternative, to Stay Proceedings Pending Arbitration (Doc. 19).  In the Report and Recommendation, the Magistrate Judge recommends that the Court grant the Motion as to the Defendants' request to compel arbitration and stay the case pending the outcome of the arbitration ("Motion to Dismiss"). (Doc. 28.)   Plaintiff timely filed Objections to the Report and Recommendation (Doc. 29) ("Plaintiff's Objections"), and Defendants filed a Response (Doc. 32) ("Defendants' Response"). Accordingly, this matter is ripe for review.

**I.   BACKGROUND**

On January 31, 2013, Plaintiff Gian V. Corbin filed a Complaint in this matter as a collective action under the Fair Labor Standards Act, as amended ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that the Defendants failed to pay overtime wages.  Doc. 1.  Plaintiff was employed by Defendants in Florida as a Data Support Analyst from about November 2011 until November 2012. *Id.* ¶ 8.  The

Court notes that, of the three named Defendants in this case, Defendant Affiliated Computer Services, Inc. ("ACS"), Defendant Xerox Business Services, LLC ("XBS"), and Defendant Xerox Corporation ("Xerox"), Xerox was dismissed from the case on May 29, 2013 (Doc. 36), and XBS was formerly known as ACS prior to a name change in 2012 (Doc. 19-1 ¶ 3).  Plaintiff was employed with ACS/XBS through both name changes.  Doc. 19-1.

On March 18, 2013, Defendants filed the instant Motion to Dismiss, arguing that Plaintiff agreed to arbitrate employment-related disputes on an individual basis only, and because the Dispute Resolution Program ("DRP") expressly covers the claims alleged in Plaintiff's complaint, dismissal rather than a stay is appropriate.  Doc. 19.  Defendants' motion for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) is supported by the Declarations of Jamie Son (Senior Human Resources Director for XBS) and Eugene Johnson (Ombudsman for XBS) and the documents attached to those affidavits.  Docs. 19-1, Ex. A ("Son Declaration") and 19-2, Ex. B ("Johnson Declaration").

In his Declaration, Mr. Son states that ACS had a comprehensive, binding DRP, which required its employees to resolve workplace disputes through the following four options: Open Door, Internal Conference, Mediation, and Arbitration. Son Declaration at pp. 2-3.  ACS could make changes to the DRP, prospectively, after notice to its employees. *Id.*  The DRP continued in effect after ACS changed its name to XBS. *Id.* at 3.

Defendants contend that Plaintiff was notified about the DRP in four different ways and agreed to resolve workplace disputes in accordance with the DRP in each instance: (1) Before his date of hire, which was on November 28, 2011,[1] Plaintiff was provided with a document entitled

---

[1] Plaintiff was terminated from XBS due to an involuntary reduction in force on November 16, 2012. Son Decl. ¶ 7

2

"ACKNOWLEDGEMENT OF DISPUTE RESOLUTION," which stated that the DRP was the exclusive means for resolving disputes concerning Plaintiff's employment with Defendants. Mot. to Dismiss at p. 2, Son Decl. ¶ 5, Ex. A-1. Plaintiff's name is typed in the space provided for his signature, followed by an IP address, the date, November 23, 2011, and time. Ex. A-1. (2) Also, as a new hire, Plaintiff was given a copy of the Employee Guidebook, which contained a summary of the DRP. Mot. to Dismiss at p. 3, Son Decl. at p. 3. According to Mr. Son, Plaintiff electronically certified that he had received and reviewed the guidebook, and agreed to the conditions of his hiring, by typing his initials next to the date, November 25, 2011. Mot. to Dismiss at p. 3, Son Decl. at p. 3, Exs. A-2, A-3. (3) Plaintiff received new hire training which was conducted on a computer using an interactive process, and this training included a module explaining the DRP. Son Decl. at p. 3. (4) On September 14, 2012, Plaintiff was sent an email at his work address informing him of a revised version of the DRP, with the subject line: "DRP (MANDATORY ARBITRATION PLAN) WILL APPLY TO YOU." Mot. to Dismiss at p. 3, Son Decl. at p. 3, Johnson Decl. at p. 1. The email stated that "As you already know, under the terms of the DRP, virtually all legal Disputes (as defined in the DRP) concerning your employment, the terms and conditions of your employment and/or your separation from employment are subject to final and binding resolution exclusively by arbitration. In other words, both you and the Company waive the right to have a Dispute decided by a judge or jury. . . . One of the changes made to the DRP is the addition of a new provision which prohibits you from initiating or participating in the arbitration of a Dispute on a class, collective or consolidated basis or in a representative capacity." Johnson Decl. at p. 1, Ex. B-1. Furthermore, it stated that "Acceptance of the DRP, as revised, is a condition to your continued employment . . . ." Ex. B-1. "[B]y continuing your employment with XBS . . . you are accepting and consenting to be bound by the revised DRP . . . ." *Id.* The business records attached to Mr. Johnson's Declaration

show that this email was opened by Plaintiff at 7:56 AM on September 14, 2012 using his work email address. Johnson Decl., Ex. B-2.

In response, Plaintiff stated that he never agreed to the DRP as a condition of his employment. Doc. 23, Response in Opposition to Motion to Dismiss ("Response") at p. 7, Declaration of Gian V. Corbin at p. 2 ("Corbin Declaration"). Specifically, he states that he does not recall seeing, reviewing, or signing the "Acknowledgment of Dispute Resolution," that he did not sign it, and that he has never seen the DRP referred to therein. Resp. at p. 6, Corbin Decl. Plaintiff stated that he does not recall receiving, seeing, reviewing, or certifying his receipt and review of the Employee Guidebook by electronically typing his initials, that he did not certify his receipt and review of this Guidebook with his initials, and that he has never seen the DRP contained therein. Resp. at pp. 6-7, Corbin Decl. Plaintiff stated that he does not recall receiving, seeing or reviewing the revised DRP and that he has never seen the revised DRP. Resp. at p. 7, Corbin Decl. at p. 2. Finally, Plaintiff stated that he does not recall receiving or reviewing the email regarding the revised DRP. *Id.* He did not address whether he remembered the new hire computer training.

On April 15, 2013, Magistrate Judge Smith issued a Report and Recommendation on Defendants' Motion to Dismiss. Doc. 28. In the Report and Recommendation, Magistrate Judge Smith concluded that the parties did agree to arbitrate and therefore recommends that: (1) the Court grant Defendant's motion to compel arbitration and refer this dispute to arbitration, and (2) the Court stay the case pending the outcome of arbitration, because the potential settlement of Plaintiff's FLSA claims may require judicial supervision.[2] *Id.*

---

[2] Lynn's Food Store, Inc., v. United States *ex rel.* U.S. Dept. of Labor, 679 F.2d 1350, 1353-55 (11th Cir. 1982); Downey v. Robert W. Baird & Co., Inc., No. 6:07-CV-1180, 2007 WL 2729587, at *2, *2 (M.D. Fla. Sept. 18, 2007)

4

In his Objections to Magistrate Judge Smith's Report and Recommendation, Plaintiff asserts that: (1) there is a factual issue regarding the formation of the purported contract to arbitrate, and (2) the evidence submitted by the Defendants by way of affidavit is hearsay, and does not fall within any recognized hearsay exception.

## II.     STANDARD OF REVIEW

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Bd. of Educ. of State of Georgia,* 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

## III.    DISCUSSION

Plaintiff's objection to the Report and Recommendation is that, contrary to the Magistrate Judge's conclusion, there is a factual issue regarding whether Plaintiff entered into an arbitration agreement such that Plaintiff cannot be compelled to arbitrate. Pl.'s Objections at p. 2. Additionally, Plaintiff challenges the admissibility of Defendant's evidence on hearsay grounds. The Court will address each of these issues in turn.

### A.     Formation of Purported Contract to Arbitrate

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), provides the substantive law controlling the validity and enforcement of arbitration agreements. *Caley v. Gulfstrean Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). It preempts state law to the extent state law treats agreements to arbitrate differently than other contracts. *Id.* Agreements to arbitrate are "valid,

irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. The FAA requires a written agreement to arbitrate but does not require that the parties sign the agreement. *Id.*; *Caley*, 428 F.3d at 1369.

The FAA "embodies the national policy favoring arbitration . . . ." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). However, it is well established that "parties cannot submit to arbitration if they have not agreed to do so." *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 Fed.Appx. 782, 785 (11th Cir. 2008). Arbitration is a matter of contract and a party cannot be required to arbitrate a dispute it did not agree to submit to arbitration. *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992). Whether the parties entered into an agreement to arbitrate a dispute is ordinarily an issue for judicial determination. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010). In deciding whether the parties agreed to arbitration, the Court applies state law governing the formation of contracts while at the same time, taking into consideration the federal policy favoring arbitration. *Caley*, 428 F.3d at 1368.

Under Florida law, the formation of an enforceable contract requires, "an offer, acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *West Const., Inc. v. Florida Backtop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012)(quoting *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 F.2d 817, 819 (1975)). Whether an express contract has been formed "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having meant the same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974) (citations omitted).

As the party moving to compel arbitration, the burden is on Defendants to make a *prima facie* case showing the existence of an agreement to arbitrate. *In re W. Wiand*, No. 8:10-cv-71-T-

17MAP, 2011 WL 4532070, *4 n. 13 (M.D. Fla. June 8, 2011). In his Report and Recommendation, the Magistrate Judge concluded that Defendants made such a showing with evidence of the September 14, 2012, email informing Plaintiff of the revised DRP.[3] The Court agrees.

As noted above, Mr. Johnson declared that, Plaintiff, along with all other XBS employees, was sent an email notification at his XBS email address on September 14, 2012 about the company's revised DRP bearing the subject line: "DRP (MANDATORY ARBITRATION PLAN) WILL APPLY TO YOU." Johnson Decl. ¶¶ 2-3. The contents of the email, entitled "DRP Changes Affect You" stated:

> ************IMPORTANT NOTICE************
>
> CHANGES TO XEROX BUSINESS SERVICES
> DISPUTE RESOLUTION PLAN AND DISPUTE
> RESOLUTION RULES
>
> The purpose of this Notice is to inform you of upcoming changes to our Dispute Resolution Plan and Rules ("DRP"). These are the first changes to the DRP since it was implemented back in 2002 (other than name changes to reflect Xerox's purchase of ACS). While the DRP has withstood the test of time, we recognize the fact that there have been a lot of changes internally and externally. So, we decided it was time to review and refresh our DRP to ensure it continues to help effectively resolve disputes moving forward.
>
> A complete copy of the DRP with all the changes and updates is available by clicking here.[[4]] You can also find

---

[3] The Magistrate Judge did not address whether Defendant's evidence supporting its other three claims of DRP notification were sufficient to make out a *prima facie* case and Plaintiff did not take issue with that omission in his Objections to the Report & Recommendation. Because the Magistrate Judge determined that there was an agreement to arbitrate based solely on the September 2012 email and the Plaintiff's objections were based solely on that same email, there is no need for the Court to opine as to the sufficiency of Defendant's other evidence in establishing a *prima facie* case here either.

[4] Mr. Johnson declared in his affidavit that the email contained a hyperlink here to the revised DRP. Johnson Decl. ¶ 3.

a copy of the revised DRP on Infobank under HR Quicklinks. You are strongly encouraged to review the DRP carefully because the changes and updates impact your legal rights. These changes and updates will become effective thirty (30) days after you receive this Notice ("Effective Date"), without further notice and will automatically apply to you if you are still employed with XBS on the Effective Date. Acceptance of the DRP, as revised, is a condition to your continued employment after that date.

As you already know, under the terms of the DRP, virtually all legal Disputes (as defined in the DRP) concerning your employment, the terms and conditions of your employment and/or your separation from employment are subject to final and binding resolution exclusively by arbitration. In other words, both you and the Company waive the right to have a Dispute decided by a judge or jury. You do not however, give up any legal remedies that would otherwise be available to you in a court of law. One of the changes made to the DRP is the addition of a new provision which prohibits you from initiating or participating in the arbitration of a Dispute on a class, collective or consolidated basis or in a representative capacity. The new provision can be found in Section 4 (c) of the DRP. It is important that you understand this new provision, as well as any other changes, will only apply prospectively. So, if you already are a party to or a member of a class action case pending against XBS, this new provision will not apply to that case.

Another important change to the DRP is the amount of advance notice you will be entitled to receive before future changes will become effective. The number of days is being increased from ten (10) to thirty (30) days. There are additional changes besides the ones described in this Notice, so it is very important that you read and understand the entire DRP.

As noted above, by continuing your employment with XBS after the Effective Date you are accepting and consenting to be bound by the revised DRP. If you do not wish to accept and be bound by the terms of the revised DRP, you must terminate your employment before the Effective Date. Termination prior to that date

>> does not alter your prior agreement to accept the 2002
>> version of the DRP and to be bound by that version.
>> Any attempt to reject any or all of the terms of the
>> revised DRP other than by separation of employment
>> will not preclude application or enforcement of the DRP
>> to future Disputes.
>>
>> This Notice does not alter the at-will status of your
>> employment with XBS.

Ex. B-1.

Mr. Johnson declared that the email was sent using "a commercial service that uses an imbedded image to document and report the date and time that the recipient opened the email." Johnson Decl. ¶ 2. Accordingly, Defendants' business records show the following relevant information, displayed on one line: DRP 9-14-12 OPEN September 14, 2012 7:56:41 AM P GIAN V. CORBIN Info Tech C Celebration FL 0008 gian.corbin@acs-inc.com. Ex. B-2. Mr. Johnson explained that this shows that Gian V. Corbin received the email containing the revised DRP notice on September 14, 2012, at his work email address and that he opened it on the same date at 7:56 PDT. Johnson Decl. ¶ 4.

This evidence is sufficient to show that Defendants sent an email regarding the revised DRP to Plaintiff to his work email address, which constituted an offer to contract, the terms of which are clearly set out in the body of the email. Specifically, the email reminded Plaintiff that any employment-related disputes were subject to resolution exclusively by arbitration, that he waived his right to have any such disputes decided by a judge or jury, and added the provision prohibiting Plaintiff from resolving such disputes on a class or collective basis. Furthermore, the evidence is sufficient to show that Plaintiff received the email at his work address on September 14, 2012, and that he opened it at 7:56 AM that same day. Moreover, Plaintiff accepted the offer by continuing his employment with XBS on October 14, 2012, 30 days after he received the email. *See* Son Decl. at p. 3, Ex B-1 ("These changes and updates will become effective thirty (30) days after you receive this

9

Notice . . . and will automatically apply to you if you are still employed with XBS on the Effective Date. Acceptance of the DRP, as revised, is a condition to your continued employment after that date. . . . [B]y continuing your employment with XBS . . . you are accepting and consenting to be bound by the revised DRP. . . . If you do not wish to accept and be bound by the terms of the revised DRP, you must terminate your employment before the Effective Date.").

Florida law recognizes the acceptance of an agreement by performance. *St. Mary's Hosp., Inc. v. Schocoff*, 725 So. 2d 454, 455 (Fla. 4th DCA 2003). Here, Corbin's continued employment at XBS is an acceptance and sufficient consideration to satisfy the requirements of an express contract. *Santos v. General Dynamics Aviation Services Corp.*, 984 So. 2d 658 (Fla. 4th DCA 2008). Thus, the Court agrees with Magistrate Judge Smith that the parties did agree to arbitrate.

In the Eleventh Circuit, to make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, that party must "unequivocally deny" that an agreement to arbitrate was reached and offer "some evidence" to substantiate the denial. *Chastain,* 957 F.2d at 854. This means that the evidence produced must be enough to "make the denial colorable." *Magnolia*, 272 F. App'x at 785 (internal citations omitted); *see also Garcia v. Mason Contract Products*, *LLC*, No. 08-23103-Civ, 2009 WL 1851131, *2 (S.D. Fla. June 29, 2009).

In the instant case, Plaintiff has unequivocally denied that he agreed to arbitrate any disputes with Defendants. Resp. at pp. 7-8. In an attempt to substantiate this denial, he offers his affidavit reiterating that he never agreed to the DRP as a condition of his employment. Corbin Decl. ¶ 17. As the Magistrate Judge concluded, this blanket denial does not constitute evidence substantiating a denial. With respect to the email of the revised DRP in question, Plaintiff merely declared that he did not recall receiving or reviewing the email. The Court agrees with the Magistrate Judge that this

10

falls far short of an unequivocal denial that he received and opened the email. Thus, Plaintiff's objections that an affidavit containing a mere denial is sufficient evidence to substantiate a denial is inapplicable here since Plaintiff has failed, in the first instance, to unequivocally deny that he received the revised DRP email. Pl.'s Objections at p. 3. Even still, the law is not on Plaintiff's side in this regard.

When a defendant has produced evidence showing that it sent an item properly mailed, or in this case emailed, there arises a rebuttable presumption that it was received by the addressee. *See Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1239 (11th Cir. 2002); *Abdullah v. American Express Co.*, No. 3:12-cv-1037, 2012 WL 6867675, *5 (M.D. Fla. Dec. 19, 2012) ("While this case deals with electronic email rather than mail sent through the U.S. Postal System, the undersigned sees no reason why the same presumption of delivery would not be applicable."). This presumption cannot be overcome merely by stating in an affidavit that the plaintiff never received the agreement. *See Abdullah*, 2012 WL 6867675 at *4-*5 (finding that in the face of the defendant's providing affirmative evidence showing that the email was sent to the plaintiff, the plaintiff's affidavits stating that he did not receive any of the notices was not enough to create a genuine issue of fact as to whether an agreement was made because it did not rise to the level necessary to rebut the presumption of receipt of the email); *Rivera v. AT&T Corp.*, 420 F. Supp. 1312, 1320 (S.D. Fla. 2006) (the plaintiffs simply declaring that they never received the mailing in response to the defendant's evidence that they sent a mailing to the plaintiffs was insufficient to send the arbitrability question to a jury); *Sanders v. Comcast Cable*, No. 3:07-cv-918, 2008 WL 150479, * 6 (M.D. Fla. Jan. 14, 2008) ("Although Plaintiffs have filed affidavits denying that they received the Arbitration Notice, these affidavits do not rise to the level necessary to rebut the presumption of receipt created when such Arbitration Notices were mailed to Plaintiffs.").

Therefore, Plaintiff has failed to create a genuine issue of fact relating to Defendants' *prima facie* showing that there was an agreement to arbitrate.

B. **Admissibility of Evidence Submitted by Defendants**

Plaintiff raises a new argument in his Objections that was not presented to the Magistrate Judge regarding the admissibility of Defendant's evidence.[5] Pl.'s Objections at pp. 7-9. Specifically, Plaintiff argues that Defendants rely upon "hearsay documents" to which no hearsay exception applies. *Id.* The two documents submitted by Defendants with regard to the email concerning the revised DRP are (1) Exhibit B-1, the contents of the revised DRP email, and (2) Exhibit B-2, a document containing information regarding when and whether XBS employees opened the email Defendants sent them concerning the revised DRP. Plaintiff argues that Defendants have failed to establish that the business records exception to these "hearsay documents" pursuant to Federal Rule of Evidence 803(6) applies. *See* Fed. R. Evid. 803(6); Pl.'s Objections at pp. 7-9.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, and is generally not admissible. *U.S. v. Fernandez*, 392 Fed. Appx. 743, 746, 2010 WL 3195721, *2 (11th Cir. 2010) (citing Fed. R. Evid. 801(c), 802). There are five separate questions that must be answered in order to properly analyze a hearsay issue: "(1) does the evidence constitute a statement, as defined by Rule 801(a); (2) was the statement made by a 'declarant,' as defined by Rule 801(b); (3) is the statement being offered to prove the truth of its contents, as provided by Rule 801(c); (4) is the statement excluded from the definition of hearsay by rule 801(d); and (5) if the statement is hearsay, is it covered by

---

[5]Corbin acknowledges that he did not originally present this argument in his response to Defendant's Motion to Dismiss. *See* Pl.'s Objections at p. 7 n.6. Nevertheless, the Court will address this objection.

one of the exceptions identified at Rules 803, 804 or 807." *Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 562-63 (D. Md. 2007) (citing Fed. R. Evid. 801, 803, 804, 807).

Defendants deny that Exhibits B-1 and B-2 constitute hearsay at all, and the Court agrees. With respect to Exhibit B-1, it is described as the contents of an "email notice of the revised DRP sent on September 14, 2012 . . . to [Plaintiff's] XBS email address," informing employees about changes to the company's dispute resolution plan and what constitutes acceptance of the plan. Johnson Decl. ¶ 3. As outlined above, the third question that must be answered in determining if evidence is hearsay is whether the statement is offered to prove its substantive truth, or for some other purpose. One instance in which assertive statements are deemed not to be hearsay because they are not offered to prove the truth of the assertions include statements offered to "prove that because they were made, listeners had notice or knowledge of the information related in the statements . . . ." *Lorraine,* 241 F.R.D. at 565-66 (citations omitted).

Referring to the revised DRP email, Defendants contended that "the emailed Notice, with its hyperlink to the XBS DRP, specifically provided notice to Plaintiff that the XBS DRP would go into effect, and provided access to the revised version." Mot. to Dismiss at p. 12. The Court is satisfied that Defendants did not offer Exhibit B-1 to prove the truth of its contents, and it therefore, is not hearsay.

With respect to Exhibit B-2, it is described as "XBS business records documenting that Mr. Corbin received the email containing the [revised DRP email] notice . . . and that he opened [it] on September 14, 2012, at 7:56 PDT." Johnson Decl. ¶ 3. Mr. Johnson declared that the notice was sent "via a commercial service that uses an imbedded image to document and report the date and time that the recipient opened the email." *Id.*¶ 2. As outlined above, the first and second requirement of hearsay is that it constitute a statement made by a declarant. Under Rule 801(a), a statement is (1)

an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion. Fed. R. Evid. 801(a). Under Rule 801(b), a "'declarant' is a person who makes a statement." Fed. R. Evid. 801(b).

"When an electronically generated record is entirely the product of the functioning of a computerized system or process, such as the 'report' generated when a fax is sent showing the number to which the fax was sent and the time it was received, there is no "person" involved in the creation of the record, and no 'assertion' being made." *Lorraine*, 241 F.R.D. at 564. "For that reason, the record is not a statement and cannot be hearsay." *Id., see also U.S. v. Lamons*, 532 F.3d 1251, 1263-64 (11th Cir. 2008)(concluding that the raw phone billing data was "stated" by the machine, not by a person); *State v. Dunn,* 7 S.W.3d 427, 432 (Mo. Ct. App. 2000) ("Because records of this type [computer generated telephone records] are not the counterpart of a statement by a human declarant, which should ideally be tested by cross-examination of that declarant, they should not be treated as hearsay, but rather their admissibility should be determined on the reliability and accuracy of the process involved."); *State v. Hall,* 976 S.W.2d 121, 147 (Tenn. 1998) (reviewing the admissibility of computer generated records and holding "[t]he role that the hearsay rule plays in limiting the fact finder's consideration to reliable evidence received from witnesses who are under oath and subject to cross-examination has no application to the computer generated record in this case. Instead, the admissibility of the computer tracing system record should be measured by the reliability of the system, itself, relative to its proper functioning and accuracy."). As stated in *U.S. v. Lamons*, "[t]o say that a wholly machine-generated statement is unreliable is to speak of mechanical error, not mendacity. The best way to advance the truth-seeking process with respect to such statements is not through cross-examination of the machine operator, but through the process of authentication as provided for in Federal Rule of Evidence 901(b)(9) (setting forth as an example of

authentication "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result")." 532 F.3d at 1265.

The same reasoning applies here with respect to Exhibit B-2. This exhibit has similarly been described as a computer-generated report that merely recorded and documented the date and time the email recipient opened the email contents. *See* Johnson Decl. This does not constitute a statement being made by a declarant as required by the hearsay rule. As such, it is not hearsay and Plaintiff's contention that it is must fail.[6]

Therefore, the court agrees with Magistrate Judge Smith's recommendation to grant Defendants' motion to compel arbitration, refer this dispute to arbitration, and stay the case pending the outcome of arbitration.

## IV. CONCLUSION

After careful consideration of the Report and Recommendation submitted by Magistrate Judge Smith, in conjunction with an independent examination of the court file, the Court is of the opinion that the Magistrate Judge's Report and Recommendation should be adopted in full.

Accordingly, it is hereby **ORDERED** as follows:

1) The Report and Recommendation of the Magistrate Judge (Doc. 28) is **ADOPTED, CONFIRMED,** and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

2) Defendants' Motion to Dismiss or in the Alternative to Stay Proceedings Pending Arbitration (Doc. 19) is **GRANTED in part** and **DENIED in part.**

---

[6] The Court notes that the exhibits submitted by Defendants in support of their Motion to Dismiss are properly validated and authenticated, as required by Rule 803(6), Fed. R. Evid

   The motion is **GRANTED** to the extent that it seeks to stay proceedings pending arbitration. The motion is **DENIED** in all other respects.

3) Plaintiff is ordered to arbitrate his FLSA claims against the Defendants.

4) This case is **STAYED** pending the conclusion of the arbitration proceedings. At the conclusion of the arbitration proceedings, any party may move to reopen this case. The Clerk is directed to terminate any pending motions and administratively close this case.

**DONE** and **ORDERED** in Orlando, Florida on July 19, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
United States Magistrate Judge Thomas B. Smith